CELIA McNEILL, CHARLES L. McNEILL, OBIE L. McLEAN, EUNICE M. MATTHEWS, GENEVIEVE BRYANT, RONALD BRYANT, ETHEARL MORRIS, JOSEPH MORRIS, HENRY SMITH, GENETTE SMITH, ESTERBELLE McALISTER, LOIS MORRIS, AND DELLA RAY v. HARNETT COUNTY; THE HARNETT COUNTY BOARD OF COMMISSIONERS; BILL SHAW, LLOYD G. STEWART, RUDY COLLINS, MAYO SMITH, AND MACK REID HUDSON, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE HARNETT COUNTY BOARD OF COMMISSIONERS; THE BUIES CREEK-COATS WATER AND SEWER DISTRICT; AND THE NORTHEAST METROPOLITAN WATER DISTRICT

No. 100PA90

(Filed 5 December 1990)

**1. Sanitary Districts § 2 (NCI3d) — sewer district — scope of authority**

Pursuant to an interlocal cooperative agreement and pursuant to the authority granted in article 15 of Chapter 153A,

---

McNEILL v. HARNETT COUNTY

[327 N.C. 552 (1990)]

a county may among other things operate a water and/or sewer system for and on behalf of another unit of local government. In addition to those powers granted to the sewer district in N.C.G.S. § 162A-88, Harnett County, as operator of a public enterprise, is clothed with those powers set forth in Chapter 153A, article 15 of the General Statutes, including the power to mandate connections and to fix charges for those connections under N.C.G.S. § 153A-284.

**Am Jur 2d, Drains and Drainage Districts §§ 2-4, 20, 40; Municipal Corporations, Counties, and Other Political Subdivisions §§ 573, 574.**

2. **Constitutional Law § 13 (NCI3d) — sewer district — mandated connection, charges and user fees — no federal constitutional violation**

   N.C.G.S. § 153A-284 (1987) and local ordinances, which were passed without notice or an opportunity to be heard and which mandate connections to sewer lines as well as the payment of related charges and user fees, are consistent with federal due process protections and are a valid exercise of the police power.

   **Am Jur 2d, Drains and Drainage Districts §§ 2-4, 20, 40; Municipal Corporations, Counties, and Other Political Subdivisions §§ 573, 574.**

3. **Constitutional Law § 13 (NCI3d) — sewer district — establishment of sewer system — mandated connection and charges — no violation of North Carolina Constitution**

   The establishment and operation of a sewer system by a sewer district in a county is a valid exercise of the police power under the law of the land clause of the North Carolina Constitution. Moreover, N.C.G.S. § 153A-284 and the ordinance mandating connection to the system are also valid exercises of the police power under the North Carolina Constitution. Article I, § 19 of the Constitution of North Carolina.

   **Am Jur 2d, Drains and Drainage Districts §§ 2-4, 20, 40; Municipal Corporations, Counties, and Other Political Subdivisions §§ 573, 574.**

**4. Sanitary Districts § 3 (NCI3d) — sewer district — method of financing**

In an action arising from the construction of a sewer system, the Supreme Court held that the General Assembly intended that a local government may choose between financing a project using a procedure which would result in an assessment and doing so by other methods not involving a lien-producing assessment. If the requirements of Chapter 153A, Article 9 are met, the county then has certain remedies otherwise not available to it; however, if the county does not elect to acquire the statutory benefits by following the procedural requirements which would culminate in a lien on the property, the plaintiffs do not receive the statutory protections of notice and hearing as set out in N.C.G.S. § 153A-191. The mandate of N.C.G.S. § 153A-276 applies only where restrictions, limitations, procedures, and regulations otherwise provided by law are themselves mandatory; there is no statute or law that mandates notice and hearing requirements for ordinances requiring mandatory connections and fixing related connection charges and user fees.

**Am Jur 2d, Drains and Drainage Districts §§ 20, 40-42, 48, 54; Municipal Corporations, Counties and Other Political Subdivisions §§ 573, 574.**

**Validity and construction of regulations by municipal corporation fixing sewer-use rates. 61 ALR3d 1236.**

**5. Sanitary Districts § 3 (NCI3d) — sewer district — user fees — no service then existing**

In an action arising from the construction of a new sewer system, it was held that the provisions of N.C.G.S. § 162A-88 authorizing user fees for services to be furnished is not limited to the financing of maintenance and improvements of existing customers. Moreover, language in a bond order to the effect that taxes would be levied does not limit the county's ability to finance the project solely to the imposition of taxes.

**Am Jur 2d, Drains and Drainage Districts §§ 20, 40-42, 48, 54; Municipal Corporations, Counties and Other Political Subdivisions §§ 573, 574.**

**Validity and construction of regulations by municipal corporation fixing sewer-use rates. 61 ALR3d 1236.**

McNEILL v. HARNETT COUNTY

[327 N.C. 552 (1990)]

6. **Sanitary Districts § 2 (NCI3d) — sewer district — failure to pay sewer fees — termination of water services**

Water services were properly terminated without notice or opportunity for hearing for failure to pay sewer fees even though the plaintiffs were not yet on the sewer system because the water service furnished by the county here did not rise to the level of property protected by due process requirements. N.C.G.S. § 153A-283 states specifically that in no case may a county be held liable for damages for failure to furnish water or sewer services; in light of this provision, a citizen of a county of North Carolina may not assert a claim of entitlement to water services. Assuming that such a property interest exists, the McNeills were given adequate notice and opportunity to be heard.

**Am Jur 2d, Drains and Drainage Districts §§ 20, 40-42, 48, 54; Municipal Corporations, Counties and Other Political Subdivisions §§ 573, 574.**

**Validity and construction of regulations by municipal corporation fixing sewer-use rates. 61 ALR3d 1236.**

7. **Attorneys at Law § 64 (NCI4th) — sewer district — civil rights action — attorneys' fees**

An award of attorneys' fees under 42 U.S.C. 1983 was reversed where the underlying decision was reversed and plaintiffs did not prevail in their cause.

**Am Jur 2d, Civil Rights § 278.**

**Construction and application of Civil Rights Attorney's Fees Awards Act of 1976 (amending 42 USCS sec. 1988), providing that court may allow prevailing party, other than United States, reasonable attorney's fees in certain civil rights actions. 43 ALRFed 243.**

ON appeal as of right pursuant to N.C.G.S. § 7A-30 and on discretionary review pursuant to N.C.G.S. § 7A-31 of the decision of the Court of Appeals, 97 N.C. App. 41, 387 S.E.2d 206 (1990), affirming in part and reversing in part a judgment entered by *Bowen, J.*, at the 25 July 1988 Civil Session of Superior Court, HARNETT County, and awarding attorneys' fees for plaintiffs' attorneys. Heard in the Supreme Court 6 September 1990.

McNEILL v. HARNETT COUNTY

[327 N.C. 552 (1990)]

*East Central Community Legal Services, by Leonard G. Green, for plaintiff-appellees McNeills, McLean, McAlister, and Ray; Jeffrey M. Seigle for plaintiff-appellees Matthews, Bryants, Ethearl and Joseph Morris, Smiths, and Lois Morris.*

*Woodall, Felmet & Phelps, P.A., by E. Marshall Woodall and John M. Phelps, II, for defendant-appellants.*

MEYER, Justice.

As a result of a petition from citizens of the area of Buies Creek and Coats, North Carolina, and the Town of Coats Board of Commissioners, the Harnett County Board of Commissioners (hereinafter the "County Commissioners") held a public hearing on 20 October 1980 and subsequently created the Buies Creek-Coats Water and Sewer District (hereinafter "Sewer District") pursuant to chapter 162A of the North Carolina General Statutes. On 12 February 1982, the North Carolina Environmental Management Commission found unsanitary conditions to exist and gave the Sewer District permission to proceed to construct a sewer system to serve the district.

The County Commissioners, after notice by newspaper, held a public hearing concerning the financing of the proposed construction of the sewer system on 15 March 1982 and approved the Sewer District's application to the Local Government Commission for the financing of the construction of the system. Funds for construction were to come from governmental grants, loan proceeds from the sale of general obligation bonds, and local funds. Since the expenditure of local funds was required to be made prior to expending any grant or loan funds, the County Commissioners, acting on behalf of the Sewer District, considered various methods of raising the local funds, including the use of a special assessment. Initially, the County Commissioners expressed their intention to raise the local funds by levy of a special assessment authorized under chapter 162A and pursuant to chapter 153A, article 9 of the General Statutes. The County Commissioners offered to waive the user's connection charge if the landowner would pay immediately to the Sewer District the sum of $250.00 for a residential user or $500.00 for a commercial user, these sums being referred to as "anticipated assessments." When all needed funds were received from this source, the Board of Commissioners abandoned its original idea of making "assessments" as authorized by chapter 162A, and

the funds so collected were thereafter referred to as "connection" charges.

In April 1982, a referendum was held on the proposed general obligation bond issue needed to finance the project. The voters in the Sewer District approved the bond issue, and the County Commissioners financed the project with general obligation bonds. Since these bonds pledge the full faith and credit of the County, the bond order stated that the County agreed to tax to the extent necessary to pay the bonds.

The Sewer District eventually constructed a sewer system to serve the district, which is composed of the Town of Coats, the Village of Buies Creek, and some densely populated areas west of Buies Creek. After construction of the collection lines, the Sewer District entered into an agreement in July 1984 with Harnett County, which was operating its own sewage disposal plant at Buies Creek. The agreement provided for the County to operate the newly constructed collection system as a county-operated system. In July 1984, the County adopted an ordinance mandating connection to the system. A separate ordinance establishing rules and regulations for the use of the system to include a schedule of monthly user fees and connection charges for connections to the system was adopted in August 1984. Although the record is not entirely clear, apparently a portion of the fees and charges collected is used to pay principal and interest on the debt.

Thereafter, the County served notice upon the plaintiffs requiring them to connect their improved properties to the county-operated collection system as required by the county ordinance passed pursuant to N.C.G.S. § 153A-284. The plaintiffs were also required to pay the connection charge and monthly user fees as set forth in the county ordinance establishing rules and regulations for operation of the system.

The plaintiffs refused to connect their properties to the system and brought this action for a declaratory judgment and injunction. Most of the plaintiffs have refused to make any payment of charges and fees. The County cut off the water services to one of the plaintiffs for refusal to pay fees due. The Sewer District and the County counterclaimed for an order requiring plaintiffs to connect their properties to the county-owned sewer system and for recovery of the connection charges and monthly user fees as authorized by the County's ordinance setting fees and rates. The trial court

ordered plaintiffs to connect their improved properties to the sewer line but refused to grant judgment for the connection charges.

On appeal, the Court of Appeals noted the compulsory character of the county ordinance requiring connection to the sewer system and construed the charges as an "assessment" for which there had been no notice by first-class mail to each owner of property subject to the assessment and no opportunity to be heard as required by N.C.G.S. §§ 153A-191 and -192. As a result, the Court of Appeals partially reversed the trial court. It held the County ordinance requiring connection to the sewer system to be void, ordered the County to reimburse with interest any sums paid by plaintiffs, dissolved the monetary judgments entered, and ordered attorneys' fees for plaintiffs' attorneys. The Court of Appeals affirmed the trial court's holding which relieved the plaintiffs of liability for the connection charge. *McNeill v. Harnett County*, 97 N.C. App. at 48, 387 S.E.2d at 210-11. We conclude that the Court of Appeals erred and reverse.

I.

[1] Before turning to the validity of the local government action, it is first helpful to review the scope of authority of the Sewer District and the County. The Sewer District is a county water and sewer district created pursuant to chapter 162A, article 6 of the General Statutes, and the Harnett County Board of Commissioners is the governing body of that Sewer District. The legislature has granted broad powers to water and sewer districts, some of which are set forth in N.C.G.S. § 162A-88:

The inhabitants of a county water and sewer district created pursuant to this Article are a body corporate and politic by the name specified by the board of commissioners. Under that name they are vested with all the property and rights of property belonging to the corporation; have perpetual succession; may sue and be sued; *may contract and be contracted with*; may acquire and hold any property, real and personal, devised, bequeathed, sold, or in any manner conveyed, dedicated to, or otherwise acquired by them, and from time to time may hold, invest, sell, or dispose of the same; may have a common seal and alter and renew it at will; *may establish, revise and collect rates, fees or other charges and penalties for the use of or the services furnished or to be furnished* by any sanitary sewer system, water system or sanitary sewer and water system

McNEILL v. HARNETT COUNTY

[327 N.C. 552 (1990)]

of the district; and may exercise those powers conferred on them by this Article.

N.C.G.S. § 162A-88 (1987) (emphasis added).

Other sections of chapter 162A grant additional powers to county water and sewer districts, including the power to issue various types of bonds and notes (N.C.G.S. § 162A-90 (1987)), the power to levy taxes without approval of the voters of the district (N.C.G.S. § 162A-91 (1987)), and the power to make special assessments (N.C.G.S. § 162A-92 (1987)). Each of these grants of authority is permissive and not mandatory.

Water and sewer districts may contract with counties to carry out their purposes. N.C.G.S. § 153A-275 (1987); N.C.G.S. § 162A-88 (1987). The use of interlocal cooperative agreements is sanctioned with respect to public enterprises in N.C.G.S. § 153A-278, which provides that "two or more counties, cities, or other units of local government may cooperate in the exercise of any powers granted by this Article [article 15 of chapter 153A]." A public enterprise includes sewage collection and disposal systems of all types. N.C.G.S. § 153A-274(2) (1987). Specifically, the County is authorized to operate a public enterprise in order to furnish services to its citizens. N.C.G.S. § 153A-275 (1987).

Therefore, pursuant to an interlocal cooperative agreement and pursuant to authority granted in article 15 of chapter 153A, a county may, among other things, operate a water and/or sewer system for and on behalf of another unit of local government, such as a water and sewer district, and in conjunction therewith may exercise those rights, powers, and functions granted to water and sewer districts as found in N.C.G.S. § 162A-88 and those rights, powers, and functions granted to counties in N.C.G.S. ch. 153A, art. 15.

In this case, the Sewer District and Harnett County entered into a contract on 23 July 1984 wherein it was agreed that the Sewer District's sewer system, which had been completed that year, would be operated by Harnett County through its Department of Public Utilities. Such units of local government may contract with each other to execute undertakings such as public enterprises, which would include a sewer system. N.C.G.S. § 153A-274(2) (1987).

In addition to those powers granted to the Sewer District in N.C.G.S. § 162A-88, Harnett County, as operator of a public

enterprise, is clothed with those powers set forth in chapter 153A, article 15 of the General Statutes, including the power to mandate connections and to fix charges for those connections under N.C.G.S. § 153A-284. The plain wording of N.C.G.S. § 153A-284 clearly supports this conclusion. It provides that a county may mandate connections to a sewage collection line "owned or operated" by the county. The use of the word "or," indicating the alternative, is dispositive of this issue. Had the legislature intended that a county could mandate connections only when it both owned *and* operated a sewage collection line, the language of the statute would have so provided. The interlocal cooperative agreement in this case provides that the Sewer District's sewer system will be operated by the County on a continuing basis as a county-operated sewer and waste water system.

## II.

[2]   The statute entitled "Power to require connections" states:

> A county may require the owner of improved property located so as to be served by a water line or sewer [sic] collection line owned or operated by the county to connect his premises with the water or sewer line and may fix charges for these connections.

N.C.G.S. § 153A-284 (1987).

The plaintiffs contend that this statute is unconstitutional because it does not provide for notice and an opportunity to be heard before connection is ordered and therefore violates plaintiffs' due process rights. The County responds that the public policy behind the mandatory connection order is to promote the common good of the community and is an appropriate exercise of the police power.

We must first decide whether the statute and the ordinances which the County relied upon to mandate connections, as well as the payment of related fees and charges, meet due process requirements of the state and federal Constitutions.

### A. *Federal Due Process*

The principal case on point is *Hutchinson v. City of Valdosta*, 227 U.S. 303, 57 L. Ed. 520 (1913). In *Hutchinson*, the aggrieved citizen lived in a sparsely populated part of the city, about three quarters of a mile from the main business district. The City of

McNEILL v. HARNETT COUNTY

[327 N.C. 552 (1990)]

Valdosta passed an ordinance requiring property owners living along streets where sewage collection lines had been laid to install toilets in their homes and to connect them to the city sewer. Mrs. Hutchinson, in order to comply with the ordinance, would have been required to build an addition to her house, as there was no space for the toilet facilities in the existing dwelling. There was, according to the Court, no necessity on account of health to force Mrs. Hutchinson to comply with the ordinance.

Having had neither notice nor opportunity to be heard before the commencement of proceedings to force her to comply with the ordinance, Mrs. Hutchinson argued that the enabling statute violated the fourteenth amendment to the United States Constitution because it provided for neither notice nor an opportunity to be heard. The Court held that the ordinance did not violate the fourteenth amendment. The Court stated:

> It is the commonest exercise of the police power of a State or city to provide for a system of sewers and to compel property owners to connect therewith. And this duty may be enforced by criminal penalties.

*Id.* at 308, 57 L. Ed. at 523.

In *Hutchinson*, the complaints of the property owner were, in some respects, much more significant as to potential monetary costs than the complaints of the plaintiffs here. Additionally, unlike the case at bar, where defendants had received a determination from the North Carolina Environmental Management Commission that a public sewer system was needed as a result of unsanitary conditions, no such situation existed in *Hutchinson*. Yet, even under such facts, the United States Supreme Court found no constitutional violation.

Furthermore, in *Alperstein v. Three Lakes Water & Sanitation Dist.*, 710 P.2d 1186 (Colo. Ct. App. 1985), *cert. denied*, 475 U.S. 1140, 90 L. Ed. 2d 336 (1986), an act of the Colorado General Assembly authorized the defendant water and sanitation district to compel connection of inhabited properties to the sewer system of the district. Before a connection could be compelled, a finding that such connections were necessary for the protection of public health was required. The plaintiffs alleged that the language of the enabling act required personal notice and an evidentiary hear-

McNEILL v. HARNETT COUNTY

[327 N.C. 552 (1990)]·

ing before each owner could be ordered to connect. The Colorado court disagreed, finding that the law set forth no such requirement.

The plaintiffs in *Alperstein* also contended that if the statute did not require such personal notice and hearing, the due process clauses of the United States and Colorado Constitutions did. The *Alperstein* court, citing *Hutchinson*, went on to hold that due process does not require personal notice and an opportunity to be heard before issuance of a mandatory connection order. The court also stated that "[n]umerous state courts have followed [*Hutchinson's*] holding that personal notice and a hearing are not required prior to ordering connection to a public sewer system." *Id.* at 1189.

Other courts have considered the constitutionality of ordinances mandating connections apparently enacted without notice and an opportunity to be heard and have upheld them. In *Weber City Sanitation Comm'n v. Craft*, 196 Va. 1140, 87 S.E.2d 153 (1955), the Virginia court held that both the statute which created the sanitary district and established its commission and the commission's resolution requiring that abutting property owners connect with the district's waterworks and abandon private subsurface water for personal use and consumption were within the police power and did not constitute an unconstitutional deprivation of property as measured by the Virginia and United States Constitutions.

In *Nourse v. City of Russellville*, 257 Ky. 525, 78 S.W.2d 761 (1935), the Kentucky court upheld the city's action in compelling the property owners to connect to the city sewer system. The city did not have a specific statutory directive, but the court recognized the city's authority to abate nuisances at common law under the police power. Specifically, the court held that the state statute authorizing the city to build and operate sewers and to abate nuisances, as well as the city's action to compel connection, were all constitutional.

In *Township of Bedford v. Bates*, 62 Mich. App. 715, 233 N.W.2d 706 (1975), the court found that even absent a showing that a particular septic tank system is inadequate, an owner of property on which "sanitary sewage originates" may be forced to connect to the public sewer system. *Id.* at 716, 233 N.W.2d at 707. The court cited numerous court decisions upholding such mandatory connections against constitutional attack.

McNEILL v. HARNETT COUNTY

[327 N.C. 552 (1990)]

The establishment and operation of a sewer system is usually regarded as an exercise of a local government's police power, and "so is an ordinance requiring property owners to make connections therewith." E. McQuillin, *Municipal Corporations* § 31.10 (3d ed. 1983). In a case in which the owner of a lodging house in New York City was required to expend considerable sums to install a sprinkler system in his building, which had been built four years earlier in full compliance with all city building requirements, the United States Supreme Court made the observation that "[t]he police power is one of the least limitable of governmental powers, and in its operation often cuts down property rights." *Queenside Hills Realty Co. v. Saxl*, 328 U.S. 80, 83, 90 L. Ed. 1096, 1098 (1946).

We conclude that the statute and the ordinances in question, which were passed without notice and an opportunity to be heard and which mandate connections to the sewer lines as well as the payment of related connection charges and user fees, are consistent with federal procedural due process protections and are a valid exercise of the police power.

## B. *North Carolina Due Process*

[3] Section 19 of article I of the Constitution of North Carolina, which contains the law of the land clause, provides as follows: "No person shall be . . . deprived of his life, liberty, or property, but by the law of the land." This clause is synonymous with the fourteenth amendment due process clause of the federal Constitution. *Watch Co. v. Brand Distributors and Watch Company v. Motor Market*, 285 N.C. 467, 206 S.E.2d 141 (1974). Decisions by the federal courts as to the construction and effect of the due process clause of the United States Constitution are binding on this Court; however, such decisions, although persuasive, do not control an interpretation by this Court of the law of the land clause in our state Constitution. *Id.* We must therefore make an independent determination of the constitutional rights of the plaintiffs under the law of the land provision of our state Constitution.

This Court has held that the establishment and maintenance of a sewer system by a city is ordinarily regarded as an exercise of its police power. *Covington v. City of Rockingham*, 266 N.C. 507, 146 S.E.2d 420 (1966). The Court has also noted with approval certain "well-established general principles" that relate to the exercise of police power, specifically, "[t]hat the police power is subject to all the constitutional limitations which protect basic property

rights, and therefore must be exercised at all times in subordination to Federal and State constitutional limitations and guarantees." *Winston-Salem v. R.R.*, 248 N.C. 637, 642, 105 S.E.2d 37, 40 (1958).

An excellent discussion of the relationship between the due process clause and the police power is found in *State v. McCleary*, 65 N.C. App. 174, 308 S.E.2d 883 (1983), *aff'd*, 311 N.C. 397, 316 S.E.2d 870 (1984), where the Court of Appeals said:

> The Fifth and Fourteenth Amendments to the United States Constitution, together with the Law of the Land Clause of Article I, § 19 of the North Carolina Constitution, provide that no person shall be deprived of life, liberty or property without due process of law. These provisions, however, do not have the effect of overriding the power of state and local governments to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort or general welfare of the community. An exertion of the police power inevitably results in a limitation of personal liberty[,] and legislation in this field is justified only on the theory that the social interest is paramount. *Whether it is a violation of the Law of the Land Clause (Article I, § 19) or a valid exercise of the police power is a question of degree and of reasonableness in relation to the public good likely to result from it.*

*Id.* at 180, 308 S.E.2d at 888 (citations omitted) (emphasis added).

The state possesses the police power in its capacity as sovereign, and in that capacity, the legislature may enact laws, within constitutional limits, to protect or promote the health, morals, order, safety, and general welfare of society. *In re Moore*, 289 N.C. 95, 221 S.E.2d 307 (1976). This Court stated in *State v. Whitaker*, 228 N.C. 352, 45 S.E.2d 860 (1947), *aff'd sub nom. Lincoln Federal Labor Union v. Northwestern Iron & Metal Co.*, 335 U.S. 525, 93 L. Ed. 212 (1949), that the law of the land imposes flexible restraints on the exercise of state police power which are satisfied if the act in question is not " 'unreasonable, arbitrary or capricious, and . . . the means selected shall have a real and substantial relation to the object sought to be obtained.' " *Id.* at 360, 45 S.E.2d at 866 (quoting *Nebbia v. New York*, 291 U.S. 502, 525, 78 L. Ed. 940, 950 (1934) ).

This Court, in *Winston-Salem v. R.R.*, stated:

## McNEILL v. HARNETT COUNTY

[327 N.C. 552 (1990)]

> [W]hen the exercise of the police power is challenged on constitutional grounds, the validity of the police regulation primarily depends on whether under all the surrounding circumstances and particular facts of the case the regulation is . . . reasonably calculated to accomplish a purpose falling within the legitimate scope of the police power, without burdening unduly the person or corporation affected.

248 N.C. at 642, 105 S.E.2d at 40.

In *Currituck County v. Willey*, 46 N.C. App. 835, 836, 266 S.E.2d 52, 53, *disc. rev. denied*, 301 N.C. 234, 283 S.E.2d 131 (1980), the Court of Appeals, in responding to an equal protection clause claim, quoted *Strong's* as follows:

> 'A municipal ordinance is presumed to be valid, and the burden is upon the complaining party to show its invalidity or inapplicability. And a municipal ordinance promulgated in the exercise of the police power will not be declared unconstitutional unless it is clearly so, and every intendment will be made to sustain it.' 5 Strong, N.C. Index 2d, Municipal Corporations, § 8, p. 626.

In the case at bar, the County, prompted by citizen petition and after public hearing, created the Sewer District. The North Carolina Environmental Management Commission, upon a finding that sewage collection facilities were necessary for the protection of the public health, ordered the Sewer District to arrange financing and plans for a sewage collection system and to proceed as rapidly as possible to begin construction. The Sewer District obtained funding and constructed the needed sewage collection system. After an agreement was entered for the County to operate the system through its experienced utility department personnel, the County adopted mandating ordinances under the authority of N.C.G.S. § 153A-284 to assure the payment of expenses for operation and maintenance and debt service for the bonded indebtedness.

We hold that the establishment and operation of a sewer system by the Sewer District and the County is a valid exercise of the police power under the law of the land clause of the North Carolina Constitution. Moreover, we find that N.C.G.S. § 153A-284 and the ordinance mandating connection to the system are valid exercises of the police power under the North Carolina Constitution. To require notice and opportunity for hearing to all individual property

McNEILL v. HARNETT COUNTY

[327 N.C. 552 (1990)]

owners prior to the adoption of an ordinance mandating connection of improved properties pursuant to the enabling act would be burdensome, costly to local governments, and not consistent with procedures employed in the exercise of other police powers. The law of the land clause does not require notice and opportunity for hearing prior to the passage of an ordinance mandating connection to a sewer system adopted under the authority of N.C.G.S. § 153A-284.

We also hold that these same principles apply with equal force to the portion of N.C.G.S. § 153A-284 authorizing a county to require payment of charges for mandated connections and implicitly to collect fees for services thereafter provided. We perceive no meaningful legal distinction between a mandated connection and mandated charges and fees for that connection. The latter naturally follow the former.

In *Farquhar v. Board of Supvrs. of Fairfax County*, 196 Va. 54, 82 S.E.2d 577 (1954), it was contended that the enforcement of sewer connections and the collection of related charges deprived landowners of their property without due process of law. The Virginia court found such provisions "necessary implements of a sanitary system" and held the provisions to be constitutional as "a reasonable exercise of the police power of the State and bearing a substantial relation to the protection and preservation of the public health." *Id.* at 71, 82 S.E.2d at 587.

Compelling the payment of sewer fees to local governments even when the property owner has not connected to the sewer system has also been upheld. In *Marnickas v. Tremont Mun. Auth.*, 67 Pa. Commw. 117, 445 A.2d 1383 (1982), it was held that the plaintiff had to pay the sewer fees even though he was not tapped into the sewer system. In *Marnickas*, residents, like the plaintiffs in this case, were notified that they were to connect to the sewer system and that sewer rentals would be charged as of a specified date. Marnickas did not connect to the system on the grounds that he had a working system and that he could not connect to the system by a gravity flow, but only by installation of a pump. He further argued that the system was of no value to him and refused to pay any fees. The Pennsylvania court stated that value must relate to the services actually consumed *or* readily available and that there is a rebuttable presumption that property is benefited by the construction of an adjacent sewer system.

## McNEILL v. HARNETT COUNTY

[327 N.C. 552 (1990)]

The *Marnickas* court went on to require that the customer pay his sewer fees even though he was not connected and held the following reasoning to be controlling:

"[T]o allow individual property owners to elect not to tap into a sewer system accessible to it [sic] would circumvent the statutory purpose behind the imposition of sewer rentals and undermine the financial soundness of a municipality's sewer system. The rental charges are utilized to meet many fixed costs incurred by the township, costs such as operation expenses, maintenance, repair, inspection and depreciation which are incurred whether or not a particular individual is tapped into the sewer system."

*Id.* at 120, 445 A.2d at 1385 (quoting *Coudriet v. Township of Benzinger*, 49 Pa. Commw. 275, 278, 411 A.2d 846, 848 (1980)).

Based upon the authority cited, this Court concludes that N.C.G.S. § 153A-284 and the mandating ordinances here meet the requirements of both the federal and state Constitutions in authorizing the imposition of connection charges and user/availability fees related to mandated connections.

### III.

[4] The plaintiffs argue that the General Assembly intended that whenever a local government finances a project through connection charges and monthly user fees, the statutory procedures for creating an *assessment* must be complied with. The plaintiffs contend that the County's failure to follow the mandatory provisions of article 9 of chapter 153A of the North Carolina General Statutes relating to assessments which constitute a lien on the property was a circumvention of the statutory scheme for public project financing in North Carolina. The plaintiffs find a significant difference between the County's power to establish and collect fees and charges for the actual cost of operating the system and the power to collect fees and charges to pay the principal and interest for the financing of the project. Their contention is that the General Assembly intended that the special assessment procedures should apply whenever fees or charges are used to finance the construction of a public project. We find no basis for such a strained reading of these statutes and conclude that the General Assembly intended that the local government may choose between financing the project

using a procedure which would result in an assessment and doing so by other methods not involving a lien-producing assessment.

Pursuant to N.C.G.S. § 153A-190, when all or any portion of a public enterprise is to be financed by assessments, the county commissioners are required to adopt a preliminary assessment resolution. The resolution must contain information about the proposed project, a statement as to the percentage of the cost of the project that will be assessed, and an order setting a date for public hearing. The preliminary assessment resolution must be sent by first-class mail to each property owner in the project at least ten days prior to the public hearing. N.C.G.S. § 153A-191 (1987). In return, the county receives a specific lien; the delinquency of the assessed obligation authorizes a foreclosure of property without any exemptions allowed or the payment of prior recorded liens except local, state, and federal taxes. N.C.G.S. § 153A-200 (1987). Forced sale of land under a general lien, on the other hand, is subjected to exemptions and prior recorded liens. It is, therefore, the special assessment proceeding itself which creates the lien for the assessment. If the County Commissioners elect not to pursue the procedure which would establish the lien, then the special proceeding is not necessary.

The County notes that no such special assessment liens exist on the property and contends that the process invoked and completed, rather than the words used, is of paramount importance. We agree. If the requirements of chapter 153A, article 9 are met, the County then has certain remedies otherwise not available to it. However, if the County does not elect, as in this case, to acquire these statutory benefits by following the procedural requirements which would culminate in a lien on the property, the plaintiffs do not receive the statutory protections of notice and a hearing as set out in N.C.G.S. § 153A-191.

N.C.G.S. § 153A-276, "Financing public enterprises," provides as follows:

Subject to the restrictions, limitations, procedures, and regulations otherwise provided by law, a county may finance the cost of a public enterprise by levying taxes, borrowing money, and appropriating any other revenues, and by accepting and administering gifts and grants from any source.

N.C.G.S. § 153A-276 (1987).

Plaintiffs assert that because N.C.G.S. § 153A-276 provides that the financing of public enterprises is "[s]ubject to the restrictions, limitations, procedures, and regulations otherwise provided by law," that statute should be interpreted to require the notice and hearing requirements of N.C.G.S. § 153A-191 to apply to N.C.G.S. § 153A-284.

The operation of the sewer system is a public enterprise, and as such, the method of financing the system is subject to N.C.G.S. § 153A-276. However, the mandate of this section applies only where such "restrictions, limitations, procedures, and regulations otherwise provided by law" are themselves *mandatory*. N.C.G.S. § 153A-276 (1987). For instance, when an ordinance regulating a public enterprise. is adopted by a local government to finance the public enterprise, the procedures supplied in the General Statutes for adopting such an ordinance must likewise be followed; when a general obligation bond is issued by a local government, the provisions of chapter 159 of the General Statutes must be followed; and when a local government purchases equipment, the applicable statutes regarding competitive bidding, where applicable, must likewise be followed. There is no statute or law that mandates notice and hearing requirements for ordinances requiring mandatory connections and fixing related connection charges and user fees. *See Hutchinson v. City of Valdosta*, 227 U.S. 303, 57 L. Ed. 520, and its progeny.

IV.

[5] The plaintiffs also contend that the Sewer District, acting before entering into the interlocal cooperative agreement which invoked the authority of mandatory connections pursuant to N.C.G.S. § 153A-284, was not authorized to charge user fees to customers for whom no service was then existing. The Sewer District, prior to entering into the interlocal cooperative agreement, relied on statutory authority in N.C.G.S. § 162A-88, which allows it to charge user fees for services "to be furnished." The Sewer District interpreted this language to allow them to charge user fees even before the project was built, effectively financing the local share of the project costs. Plaintiffs, on the other hand, contend that, without the benefit of N.C.G.S. § 153A-284, legislative intent supports a finding that the financing of public enterprises by a sewer district should require the Sewer District to follow the procedural re-

quirements of an assessment—specifically, personal notice and a hearing.

Plaintiffs assert that a broad reading of N.C.G.S. § 162A-88, whereby a sewer district can set fees "for the use of or the services furnished or to be furnished by any sanitary sewer system," would allow the Sewer District to evade the notice and hearing requirements of N.C.G.S. § 153A-191 (assessments) and render them meaningless. They contend that, like N.C.G.S. § 153A-277, N.C.G.S. § 162A-88 is a "rate setting statute," and in that context a more consistent interpretation of the "to be furnished" language is that it authorizes increases in the rates of *existing* customers in order to finance maintenance and improvements necessary for services to *existing* customers. We disagree and hold that the provisions of N.C.G.S. § 162A-88 authorizing user fees for services "to be furnished" is *not* limited to the financing of maintenance and improvements of *existing* customers.

V.

The plaintiffs further contend that language in the bond order to the effect that taxes would be levied limits the County Commissioners' ability to finance the project solely to the imposition of taxes. We disagree. By statute, the bond order must contain mandating language. N.C.G.S. § 159-54(3) (1987). A fair reading of the language indicates that the statute applies to general obligation bonds which pledge the faith and credit of the county. N.C.G.S. § 159-46 (1987). A tax *must* be levied only if revenue from other sources is inadequate to repay the principal and interest on the bonds outstanding. Moreover, the ballot that the voters in this case considered indicates that the voters were asked only to *authorize a tax* rather than to approve an order imposing a tax. The County Commissioners were not compelled to impose a tax and were free, under these facts, to charge reasonable fees and charges to repay the bonds in lieu of the levy of a tax.

VI.

[6] A separate issue in this case is the termination of water services by the defendant County as operator of the Water District's water system without notice of, or an opportunity for, a hearing. There are six plaintiffs (comprising three households) who receive water services from the defendant Water District. On 7 January 1985, the County Commissioners adopted an ordinance authorizing

its utility department to discontinue water service to customers who were more than ten days delinquent. This included discontinuance of water service based on nonpayment of sewer charges and fees, even if the resident was not connected to the County's sewer system. On 18 April 1984, the County's utilities director had sent the McNeills a letter stating that they had ten days to pay $132.64 in sewer fees. The letter further stated that their water service would be terminated if they did not pay the sewer fees. The McNeills refused to pay the sewer fees. Their water service was terminated by the County for nonpayment of the sewer fees. They had to pay the sewer fees, plus a $25.00 reconnection fee, in order to get their water service restored.

For the McNeills to prevail on the basis of lack of notice and an opportunity to be heard, they must establish a property interest or an entitlement to the water services. North Carolina law controls the existence or nonexistence of an entitlement. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9, 56 L. Ed. 2d 30, 39 (1978). We hold that the water service furnished by the County here does not rise to the level of "property" protected by due process requirements. While other statutes specifically authorize disconnections in certain situations, N.C.G.S. § 153A-283 states specifically that "[i]n no case may a county be held liable for damages for failure to furnish water or sewer services." In light of this statutory provision, a citizen of a county in North Carolina may not assert a claim of entitlement to water services. Assuming *arguendo*, however, that such a property interest exists, the McNeills were given adequate notice and opportunity to be heard. As early as June 1984 the McNeills were aware of the sewer fees charged to them. In June 1984, Harnett County notified the McNeills that they were required to connect their properties to the sewer system. The director of Harnett County Public Utilities knew the McNeills and had spoken with them as early as May 1983 about the sewer project, when he had talked with them about conveying an easement to the Sewer District. The McNeills' response was that their septic tank was working and that they did not want to connect to the sewer system. The utilities director's letter to the McNeills of 18 April 1985 alone fully explained the facts and the basis for a potential disconnection. There can be no doubt that the McNeills had sufficient contacts with the utilities director prior to the discontinuance of their water service "to afford reasonable assurance against erroneous or arbitrary withholding

of essential services." *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. at 18, 56 L. Ed. 2d at 44 (citing *Mathews v. Eldridge,* 424 U.S. 319, 47 L. Ed. 2d 18 (1976)).

## VII.

**[7]** The Court of Appeals determined that the plaintiffs were the prevailing party and that they met the two-part test for attorneys' fees in claims under 42 U.S.C. § 1983 that was established in *Ward Lumber Co. v. Brooks,* 50 N.C. App. 294, 296-97, 273 S.E.2d 331, 333, *appeal dismissed,* 302 N.C. 398, 279 S.E.2d 356, *cert. denied,* 454 U.S. 1097, 70 L. Ed. 2d 638 (1981). However, for the above-stated reasons, we are reversing the decision of the Court of Appeals; therefore, plaintiffs have not prevailed in their cause, and we must also reverse the Court of Appeals' affirmance of the attorneys' fees awarded pursuant to 42 U.S.C. § 1988.

In conclusion, we hold that the statute in question, the ordinances mandating connection to the county-operated sewer system, and the payment of connection charges and monthly user fees for the sewer service are valid exercises of the police power and meet the due process requirements of the state and federal Constitutions. In addition, a local government is not required to use an assessment procedure to finance a project, and a sewer district may effectively finance a project through its authority to charge for services "to be furnished" pursuant to N.C.G.S. § 162A-88. Finally, we hold that the language of the bond order in this case did not require the County Commissioners to levy a tax.

For the above reasons, we reverse the decision of the Court of Appeals.

Reversed.