IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-571

Filed 05 September 2023

Carteret County, No. 20 CVS 1158

TIFFANY HOWELL; et al., Plaintiffs,

v.

ROY COOPER, III, in his official capacity as Governor; at al., Defendants.

Appeal by Defendants from an order entered 16 February 2022 by Judge Joshua W. Willey, Jr., in Carteret County Superior Court. Heard in the Court of Appeals 10 January 2023.

*Kitchen Law, PLLC, by S. C. Kitchen, for Plaintiffs-Appellees.*

*Attorney General Joshua H. Stein, by Special Deputy Attorneys General Matthew Tulchin and Michael T. Wood, for Roy A. Cooper, III, in his official capacity as Governor, and the State of North Carolina, Defendants-Appellants.*

*No brief filed for Tim Moore, in his official capacity as Speaker of the House of Representatives, and Phil Berger, in his official capacity as President Pro Tempore of the Senate, Defendants-Appellants.*

WOOD, Judge.

Governor Roy Cooper (the "Governor"), the State of North Carolina (the "State"), and Speaker of the House Tim Moore and President Pro Tempore of the Senate Phil Berger ("Defendants Moore and Berger"), collectively referred to as "Defendants," appeal the trial court's denial of a motion to dismiss a complaint brought by individuals and incorporated entities owning or operating bars

("Plaintiffs"). Plaintiffs' complaint alleged causes of action under N.C. Const. art. 1, §§ 1, 19, regarding North Carolinians' right to "the enjoyment of the fruits of their own labor" and to substantive due process under "the law of the land." We hold sovereign immunity does not bar Plaintiffs' claims and Plaintiffs state colorable constitutional claims.

## I. <u>Factual and Procedural History</u>

After the Governor declared a state of emergency in March 2020 in response to COVID-19 and issued a series of executive orders initially closing bars and repeatedly extending the closure, Plaintiffs filed their original complaint on 22 December 2020. In it, Plaintiffs alleged the executive orders made their businesses "unprofitable to operate" and caused "financial damages due to the closing of their respective businesses, or the severe restrictions placed on their respective businesses." Plaintiffs put forward five causes of action, alleging the following violations of their constitutional rights: (1) their right to earn a living ("the enjoyment of the fruits of their own labor") under N.C. Const. art. I, § 1 (the "fruits of labor clause"); (2) a purported as-applied challenge to N.C. Gen. Stat. § 166A-19.31(b)(2) (2020); (3) their substantive due process rights under N.C. Const. art. I, § 19 (the "law of the land clause"); (4) their right to equal protection of the laws under N.C. Const. art. I, § 19; and (5) a facial challenge to N.C. Gen. Stat. § 166A-19.30(c) (2020). Plaintiffs claimed damages "in excess of $25,000" and requested a permanent injunction preventing any further impairment on Plaintiffs' businesses.

On 29 January 2021, the Governor and the State filed a motion to dismiss Plaintiffs' complaint pursuant to N.C. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6) and noted any facial challenges to statutes would need to be heard by a three-judge panel of the superior court pursuant to N.C. Gen. Stat. § 1-267.1(a1) (2022). Accordingly, on 15 March 2021, the trial court transferred Plaintiffs' fifth cause of action, a facial challenge to the operative statute, to a three-judge panel.

On 11 May 2021, Plaintiffs filed an amended complaint adding Defendants Moore and Berger. On 12 July 2021, the Governor and the State filed a motion to dismiss Plaintiffs' amended complaint pursuant to N.C. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6). On 19 July 2021, Defendants Moore and Berger answered Plaintiffs' amended complaint. On 28 January 2022, the trial court held a hearing on Defendants' motion to dismiss.

On 16 February 2022, the trial court entered an order denying Defendants' motion to dismiss as to Plaintiffs' first and third causes of action pursuant to the fruits of labor clause and law of the land clause of our Constitution. The trial court transferred the second cause of action, a constitutional challenge to the operative statute, to a three-judge panel of the superior court as it had done with Plaintiffs' fifth cause of action. Finally, the trial court dismissed Plaintiff's fourth cause of action relating to equal protection and determined Plaintiffs' request for permanent injunctive relief was moot due to the lifting of restrictions on businesses by the time the matter had been heard.

## II. <u>Jurisdiction</u>

N.C. Gen. Stat. § 1-277 allows an appeal from a determination of a superior court affecting a party's substantial rights.  N.C. Gen. Stat. § 1-277 (2022).

> According to well-established North Carolina law, governmental immunity is an immunity from suit rather than a mere defense to liability.  For that reason, this Court has held that denial of dispositive motions such as motions to dismiss that are grounded on governmental immunity affect a substantial right and are immediately appealable.

(*Doe v. Charlotte-Mecklenburg Bd. of Educ.*, 222 N.C. App. 359, 363, 731 S.E.2d 245, 248 (2012) (cleaned up).  Specifically, the denial of a motion to "dismiss based on the defense of sovereign immunity pursuant to Rule 12(b)(6) . . . affects a substantial right and is immediately appealable under" N.C. Gen. Stat. 1-277.  *Murray v. Univ. of N.C. at Chapel Hill*, 246 N.C. App. 86, 92, 782 S.E.2d 531, 535 (2016).  A party actually must rely on sovereign immunity in its motion to dismiss, and it may do so in its written motion or orally at the hearing on the motion to dismiss.  *Id.*, 246 N.C. App. at 93, 782 S.E.2d at 536 ("[S]ince neither defendant's written motion nor its oral argument at the hearing relied on Rule 12(b)(6) in connection with the sovereign immunity defense, the case law authorizing interlocutory appeals for a denial of a Rule 12(b)(6) motion based on sovereign immunity does not apply").

Here, Defendants did not mention sovereign immunity in their original motion to dismiss or in their motion to dismiss Plaintiffs' amended complaint.  However, Defendants' counsel raised sovereign immunity in the hearing on the motion to dismiss:

> [T]he plaintiffs' amended complaint fails to state a claim and must be dismissed for a couple of reasons . . . . The second reason . . . is that the plaintiffs are seeking damages in this case, and we would contend that the damages claims are barred by sovereign immunity.

Defendants' counsel's reference here indicates Defendants' motion to dismiss pursuant to Rule 12(b)(6) is based, at least partially, on a sovereign immunity defense. Accordingly, at a minimum, the trial court's denial of Defendants' Rule 12(b)(6) motion based on sovereign immunity affected Defendants' substantial rights, and therefore, their interlocutory appeal is properly before us. *Murray*, 246 N.C. App. at 92, 782 S.E.2d at 535.

We note that a "denial of a Rule 12(b)(1) motion based on sovereign immunity does not affect a substantial right [and] is therefore not immediately appealable under" N.C. Gen. Stat. § 1-277. *Can Am S., LLC v. State*, 234 N.C. App. 119, 122, 759 S.E.2d 304, 307 (2014). Therefore, the trial court's denial of Defendants' motion to dismiss pursuant to Rule 12(b)(1) is not properly before us as an interlocutory appeal. As for Defendants' motion to dismiss pursuant to Rule 12(b)(2), "to the extent [D]efendant[s] relied on Rule 12(b)([2]) in moving to dismiss on sovereign immunity grounds," that component of their motion to dismiss would support an immediate appeal. *Murray*, 246 N.C. App. at 92–93, 782 S.E.2d at 536.

Accordingly, Defendants' interlocutory appeal is proper pursuant to the trial court's denial of their Rule 12(b)(6) motion to dismiss.

### III. Analysis

Defendants argue sovereign immunity bars Plaintiffs' claims, and Plaintiffs fail to state colorable constitutional claims. We disagree.

## A. Sovereign Immunity

We review "a trial court's decision to grant or deny a motion to dismiss based upon the doctrine of sovereign immunity using a de novo standard of review. Questions of law regarding the applicability of sovereign or governmental immunity are reviewed de novo." *Lannan v. Bd. of Governors of Univ. of N. Carolina*, 285 N.C. App. 574, 587, 879 S.E.2d 290, 301 (2022) (cleaned up).

We begin with a review of sovereign immunity:

> As a general rule, the doctrine of governmental, or sovereign immunity bars actions against, *inter alia,* the state, its counties, and its public officials sued in their official capacity. The doctrine applies when the entity is being sued for the performance of a governmental function. But it does not apply when the entity is performing a ministerial or proprietary function.

*Herring ex rel. Marshall v. Winston-Salem/Forsyth Cnty. Bd. of Educ.*, 137 N.C. App. 680, 683, 529 S.E.2d 458, 461 (2000) (citations omitted). Sovereign immunity, at its core, immunizes the state when it is "exercising its judicial, discretionary, or legislative authority . . . or is discharging a duty, imposed solely for the benefit of the public," from "liability for the negligence of its officers . . . unless some statute" provides otherwise. *Steelman v. City of New Bern*, 279 N.C. 589, 593, 184 S.E.2d 239, 241–42 (1971).

The doctrine of sovereign immunity is

firmly established in the law of our State today and has been recognized by the General Assembly as the public policy of the State. The doctrine of sovereign immunity has been modified, but never abolished. It has been said that the present day doctrine seems to rest on a respect for the positions of two coequal branches of government—the legislature and the judiciary. Thus, courts have deferred to the legislature the determination of those instances in which the sovereign waives its traditional immunity.

*Corum v. Univ. of N. Carolina Through Bd. of Governors*, 330 N.C. 761, 785, 413 S.E.2d 276, 291 (1992).

Still, North Carolina courts have a sacred duty to safeguard the constitutional rights of her citizens. "[I]t is the judiciary's responsibility to guard and protect those rights" enumerated in the Declaration of Rights. *Id.* At 785, 413 S.E.2d at 291. "The doctrine of sovereign immunity cannot stand as a barrier to North Carolina citizens who seek to remedy violations of their rights guaranteed by the Declaration of Rights." *Id.* At 785-86, 413 S.E.2d at 291. And because "rights protected under the Declaration of Rights from violation by the State are constitutional rights," whereas the doctrine of sovereign immunity "is a common law theory or defense established by" our Supreme Court, "when there is a clash between these constitutional rights and sovereign immunity, the constitutional rights must prevail." *Id.* At 786, 413 S.E.2d at 292.

In *Corum*, a landmark sovereign immunity case, our Supreme Court stated:

When called upon to exercise its inherent constitutional power to fashion a common law remedy for a violation of a particular constitutional right, . . . the judiciary must recognize two critical

limitations. First, it must bow to established claims and remedies where these provide an alternative to the extraordinary exercise of its inherent constitutional power. Second, in exercising that power, the judiciary must minimize the encroachment upon other branches of government -- in appearance and in fact -- *by seeking the least intrusive remedy available and necessary to right the wrong.*

330 N.C. at 784, 413 S.E.2d at 291 (emphasis added). Defendants argue sovereign immunity bars Plaintiffs' claims because in seeking monetary damages, Plaintiffs did not seek the least intrusive remedy. Specifically, Defendants argue the mandate to "seek the least intrusive remedy available" applies at the pleading stage, and therefore requires a plaintiff to seek injunctive relief before the party may state a claim for damages. The *Corum* court specifically referred to the judiciary's responsibilities in formulating a remedy, however, not a party's obligations at the pleading stage: "It will be a matter for the trial judge to craft the necessary relief." *Id.* at 784, 413 S.E.2d at 290. Accordingly, *Corum* requires the judiciary to shape the remedy, not a plaintiff to seek injunctive relief as a prerequisite to reaching trial. When a constitutional violation occurs, and no statute provides redress for the violation, the constitutional provision "is self-executing, and the common law, which provides a remedy for every wrong, will furnish the appropriate action for the redress of such grievance." *Sale v. State Highway & Pub. Works Comm'n*, 242 N.C. 612, 618, 89S.E.2d 290, 296 (1955). We further conclude that any failure by Plaintiffs to seek injunctive relief prior to damages does not stand as a bar at the pleading stage to their claim for damages.

**B. Stating a Constitutional Claim**

"When reviewing a motion to dismiss, an appellate court considers whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Deminski on behalf of C.E.D. v. State Bd. of Educ.*, 377 N.C. 406, 412, 858 S.E.2d 788, 793–94 (2021).

Also relevant to whether Plaintiffs can survive Defendants' immunity defense is whether Plaintiffs have stated constitutional claims. The doctrine of sovereign immunity shall not operate to deprive North Carolinians of an opportunity to redress alleged constitutional violations. *Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 340, 678 S.E.2d 351, 356 (2009). Our Supreme Court has "carved out an express exception to sovereign immunity for constitutional injuries." *Town of Apex v. Rubin*, 277 N.C. App. 328, 352, 858 S.E.2d 387, 403 (2021). Specifically, "in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution." *Corum*, 330 N.C. at 782, 413 S.E.2d at 289. *Corum* specifically held sovereign immunity will not bar North Carolinians from seeking to remedy alleged violations guaranteed by the Declaration of Rights of our Constitution. *Id.* at 783, 413 S.E.2d at 290; *see also Bunch v. Britton*, 253 N.C. App. 659, 667, 802 S.E.2d 462, 469 (2017).

The very first Article of our Constitution reads: "We hold it to be self-evident that all persons are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, *the enjoyment of the*

*fruits of their own labor, and the pursuit of happiness*."  N.C. Const. art. I, § 1

(emphasis added).  Later, our Declaration of Rights states:

> No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin.

N.C. Const. art. I, § 19.

A plaintiff's complaint must sufficiently allege: (1) a state actor violated an individual's constitutional rights, (2) the claim is a colorable constitutional claim ("the claim must present facts sufficient to support an alleged violation of a right protected by the State Constitution"), and (3) there is no adequate state remedy apart from a direct claim under the Constitution.  *Deminski*, 377 N.C. at 413–14, 858 S.E.2d at 793–94.

Here, first, we must determine whether the Complaint sufficiently alleges violations of Plaintiffs' constitutional rights. Regarding Plaintiffs' fruits of labor claim, their complaint states:

> 42. The Plaintiffs are each owners and operators of bars located in the State of North Carolina.

> 43. By his issuance of various Executive Orders . . . Defendant Cooper has ordered that the facilities of the Plaintiffs be closed, or so severely restricted as to make the facilities of the Plaintiffs unprofitable to operate. . . .

45. [The] Executive Orders . . . deprive the Plaintiffs of their inalienable right to earn a living as guaranteed by Art. I, sec. 1 and 19, of the North Carolina Constitution. . . .

48. [The] Executive Orders . . . are or were unconstitutional as applied to owners and operators of bars as neither the State of North Carolina nor the Governor of the State possess the authority to deprive the Plaintiffs of their right to earn a living.

49. Due to the unconstitutional executive orders, the Plaintiffs have been damaged in a sum in excess of $25,000.

Regarding Plaintiffs' substantive due process claim, their complaint states:

57. Plaintiffs have the fundamental right to earn a living.

58. Article I, sec. 19 of the North Carolina Constitution guaranties that the State does not issue orders that are unreasonable, arbitrary or capricious, and the law be substantially related to the valid object sought to be obtained. . . .

60. There is no rational basis for allowing restaurants, private clubs, breweries, wineries, and distilleries to reopen indoors while requiring the Plaintiffs' businesses to remain closed or only operating outdoors. Nor is there a rational basis for limiting alcohol sales between the hours of 9:00 pm and 7:00 am.

61. [The] Executive Orders . . . thus violate the substantive due process rights of the Plaintiffs and are invalid.

We conclude the Complaint sufficiently alleges state violations of Plaintiffs' constitutional rights because it coherently pleaded the Governor's orders violated their constitutional right to earn a living. *Deminski*, 377 N.C. at 413, 858 S.E.2d at 793.

Second, we must determine whether the Complaint sufficiently alleges a colorable constitutional claim pursuant to theories under the fruits of labor and law

of the land clauses of our Constitution. We begin with determining whether Plaintiffs state a claim under the fruits of labor clause. We have held the "provision creates a right to conduct a lawful business or to earn a livelihood that is 'fundamental' for purposes of state constitutional analysis." *Treants Enters., Inc. v. Onslow County*, 83 N.C. App. 345, 354, 350 S.E.2d 365, 371 (1986). "[T]he power to regulate a business or occupation does not necessarily include the power to exclude persons from engaging in it. When this field has been reached, the police power is severely curtailed." *State v. Harris*, 216 N.C. 746, 759, 6 S.E.2d 854, 863 (1940) (citations omitted). The *Harris* court held licensing requirements applicable to the dry cleaning industry were unconstitutional under the fruits of labor clause (among other constitutional provisions) for their "invasion of personal liberty and the freedom to choose and pursue one of the ordinary harmless callings of life—a right which we conceive to be guaranteed by the Constitution." *Id.* at 751, 753, 765, 6 S.E.2d at 858–59, 866.

The thrust of the fruits of labor clause is that the state "may not, under the guise of protecting the public interest, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations." *Cheek v. Charlotte*, 273 N.C. 293, 296, 160 S.E.2d 18, 21 (1968) (licensing requirements unconstitutionally targeted massage parlors). Although this State's courts often have analyzed the fruits of labor clause in the context of legislative licensing requirements, that context is not its only application. *See King v. Town of Chapel Hill*, 367 N.C.

400, 408–09, 758 S.E.2d 364, 371 (2014) (town council's fee schedule for vehicle towing services "implicates the fundamental right to earn a livelihood" under the fruits of labor clause) (quotation marks omitted); *see also Tully v. City of Wilmington*, 370 N.C. 527, 535–36, 810 S.E.2d 208, 215 (2018) ("Article I, Section 1 also applies when a governmental entity acts in an arbitrary and capricious manner toward one of its employees").

Here, Plaintiffs have a fundamental right to earn a living from the operation of their respective bar businesses. The constitutional right to produce a living from the income of one's business is a protected right under the fruits of labor clause. Where, as here, the complaint alleges that the blanket prohibition—rather than regulation—of an entire economic sector violates one's right to earn a living, that complaint states a colorable constitutional claim. *Deminski*, 377 N.C. at 413, 858 S.E.2d at 793.

Next, we turn to whether Plaintiffs state a claim under the law of the land clause. Our Supreme Court has held that the "law of the land" clause is North Carolina's version of the federal substantive due process clause. *McNeill v. Harnett Cnty.*, 327 N.C. 552, 563, 398 S.E.2d 475, 481 (1990); *see also Rhyne v. K-Mart Corp.*, 358 N.C. 160, 180, 594 S.E.2d 1, 15 (2004). Therefore, that clause protects those "fundamental rights and liberties which are, objectively, deeply rooted in [this State's] history and tradition and implicit in the concept of ordered liberty." *State v. Dobbins*, 277 N.C. 484, 497, 178 S.E.2d 449, 457, (1971); *Matter of Bethea*, 255 N.C.

App. 749, 754, 806 S.E.2d 677, 680–81 (2017). Our Supreme Court has described the right to enjoy the fruits of one's own labors as the inalienable right to earn a living as long as the business is not "within the category of social and economic ills." *State v. Harris*, 216 N.C. 746, 759, 6 S.E.2d at 854, 863 (1940). "The right to conduct a lawful business or to earn a living is regarded as fundamental." *Roller v. Allen*, 245 N.C. 516, 518–19, 96 S.E.2d 851, 854 (1957).

Here, Plaintiffs have a fundamental right to earn a living from the operation of their respective bar businesses. Accordingly, we conclude Plaintiffs' allegations that the executive orders violated their right to earn a living sufficiently pleaded a constitutional claim under the law of the land clause. *Deminski*, 377 N.C. at 413, 858 S.E.2d at 793–94.

Finally, Plaintiffs pleaded they do not have an adequate state remedy: "The Emergency Management Act under which the Defendants are operating does not provide for a plain, speedy, or adequate remedy at law. The [Plaintiffs] therefore do not have an adequate state remedy." We agree there is no other adequate state remedy now that any claim for injunction is moot as the executive orders are no longer in effect. Accordingly, we conclude Plaintiffs adequately pleaded lack of an adequate state remedy. *Deminski*, 377 N.C. at 413, 858 S.E.2d at 793–94.

In conclusion, we hold the trial court did not err in denying the Motion to Dismiss as to Plaintiffs' first and third causes of action for failure to state a claim upon which relief can be granted.

We do not address the validity of the Governor's actions under the Emergency Management Act, as the constitutionality of those statutes has yet to be determined. Two of Plaintiff's causes of action challenge the constitutionality of the statutes under which the Governor purported to act. The trial court transferred Plaintiffs' constitutional challenges to N.C. Gen. Stat. § 166A-19.30(c) and N.C. Gen. Stat. § 166A-19.31(b)(2) to a three-judge panel as required. Defendants did not appeal the trial court's transfer of Plaintiffs' second and fifth causes of action, thus, those matters remain pending before the three-judge panel. Therefore, we do not reach a determination of the validity of the Governor's actions under those statutes.

## IV. Conclusion

We are tasked with determining whether sovereign immunity bars Plaintiff's claims at the pleading stage and whether Plaintiffs allege colorable constitutional claims. We do not address the validity of the statutes being contested nor decide the merits of Plaintiffs' claims as those issues are not before us. To that end, we hold any alleged failure on the part of Plaintiffs to seek injunctive relief prior to damages does not bar their claims at the pleading stage under the theory of sovereign immunity. We further hold Plaintiffs have stated colorable constitutional claims where they allege a blanket prohibition against conducting their bar businesses violated both their right to earn a living and their substantive due process rights under N.C. Const. art. 1, §§ 1, 19. We affirm the trial court's denial of Defendants' Motion to Dismiss.

AFFIRMED.

Judge Gore concurs.

Judge Arrowood dissents by separate opinion.